Thompson, J.
delivered the opinion of the Court.
The accused, the captain of a canal boat and carrier for hire on the James river canal, was on the 7th of December 1848, committed by the mayor of the city of Richmond, upon a charge of feloniously embezzling and fraudulently converting to his own use, a box of merchandise, delivered to him for transportation to Buchanan, the property of Word, Ferguson & Barks-dale, merchants of the city of Richmond. He was examined and remanded for further trial by the Hustings court on the 18th of January 1849, and being admitted to bail, he entered into a recognizance with approved security to appear at the next term of the Circuit Superior court for the county of Henrico and city of Richmond: the witnesses for the Commonwealth were recognized to appear at the same term to give evidence in behalf of the Commonweath. The accused failed *665 to appear at the first of the term, his default was recor- , , , . . . . . „ . ded, his recognizance estreated, and a scire facias awarded against him and his bail. At a subsequent day of the term he made his appearance; whereupon on his motion the orders of default and award of scire facias were set aside, and he was released from the breach of his recognizance : In the meantime however the witnesses for the Commonwealth, the two recognized, Ferguson and Blair, had appeared and been recognized to the next term, and the cause virtually continued : and then the prisoner was again let to bail and recognized to appear at the next term. Neither at this term nor at the first was any indictment found by the grand jury. Whether the failure to send the indictment to the grand jury at the first term was owing to the failure of the accused to appear before the Commonwealth’s witnesses had been adjourned over and recognized to appear at the next term and the cause virtually continued ; or whether the failure to indict at both the first and second terms was owing to the absence of the witness Roberts, the other two Ferguson and Blair, upon whose evidence the bill was eventually found, being present on both occasions, the record does not inform us; and therefore we can only conjecture. If the non-appearance of the accused at the first ferm was the cause of the failure then either in whole or in part, the presumption is that the cause of the second failure was the absence of the witness Roberts. At the third term, April 1850, the indictment was found; and then and at the fourth term, November 1850, the cause was continued on motion of the prisoner. At the fifth term, April 1851, the indictment which contained but one count and laid the goods charged to be embezzled as the property of Word, Ferguson & Barksdale, came on for trial, was tried, and the jury who tried it returned a verdict of guilty, and assessed the term of imprisonment in the penitentiary at one *666 year. The prisoner moved for a new trial, which was granted by the Court upon the ground of a variance between the allegata et probata relative to the owner- • ship or property in the goods, which were the subject of the embezzlement. The case then necessarily stood over to the November term 1851, for the new trial. At that term the attorney for the Commonwealth, as it was his duty to do, to avoid a second failure upon the ground of variance in the event of the same evidence being adduced on the new trial, and the opinion of the Court remaining the same upon the question of ownership, to wit, that the property of the goods was in the consignees, the Messrs. Ayres of Buchanan, and not the consignors, Word, Ferguson & Barksdale, asked and obtained leave of the Court to enter a nolle prosequi as to the first indictment, and to send up a new bill; which was found by the grand jury then in session: the prisoner, upon the motion of the attorney for the Commonwealth, being detained in custody to answer the new indictment based upon his examination by the Hustings court for the same offence, varying in nothing but in the incident of ownership or property in the goods. This new indictment contains three counts, all charging the same corpus delicti. The first embraces the old indictment in totidem verbis, laying the property of the goods in Word, Ferguson & Barksdale ; the second alleges their ownership in R. M. & Francis Ayres; and the third alleges delivery by Word, Ferguson & Co. of the goods of R. M. & Francis Ayres, to the accused to be carried and delivered to them at Buchanan: In short, the new indictment is the old one with two additional or superadded counts. Upon his arraignment upon this new indictment the prisoner tendered a plea in abatement, setting forth that he had not been regularly and legally examined for the offence therein charged. To his plea the attorney for the Commonwealth replied that he had been regularly and legally *667 examined, and remanded by the Hustings court for the offence whereof he was indicted; and vouched the record and proceedings of the examining Court. To this replication the prisoner demurred ore terms; the attorney for the Commonwealth in like manner joined in the demurrer; and the Court overruled the demurrer: being of opinion that the prisoner had been regularly and legally examined for the offence charged. Whereupon he moved the Court to discharge him from the offence aforesaid, on the ground that three regular criminal terms of the Court had been held since he was examined and remanded for trial before the same, for the said offence, without being indicted for the same : and in support of his motion he vouched the record of the examining Court, shewing that he was examined and remanded for the offence on the 18th of January 1849, and shewing by the record of the Circuit Superior court that more than three regular criminal terms had been held since his examination, to wit, on the 3d day of May 1849, 13th of November 1849, 29th of April 1850, 8th day of November 1850, and 28th of April 1851; and alleging that at neither of these terms had he been indicted for the offence aforesaid. The attorney for the Commonwealth opposed the prisoner’s motion for his discharge ; and for the purpose of answering and negativing his allegation of a failure to indict in three terms, offered to introduce the record of the proceedings of the Circuit court upon the first indictment, shewing or purporting to shew, that the prisoner had not only been indicted but tried upon the indictment in due time, and found guilty by the verdict of a jury; and applied for and obtained a new trial of the Court upon the ground of variance between the allegations and the proofs. To the introduction of this evidence the prisoner objected; but his objection was overruled, the evidence received and considered, and the prisoner’s motion for his discharge overruled. Af *668 terwards, however, the Court upon the motion of the prisoner, and by his consent and with the consent of the attorney for the Commonwealth, waived its decision upon the motion for a discharge, and the prisoner’s objection to the evidence introduced by the attorney for the Commonwealth, and adjourned to the General court for its decision thereupon, because of their novelty and difficulty, the following questions :
First — “ Ought the Court, on the said motion of the prisoner to be discharged, to receive and consider the record and proceedings offered by the attorney for the Commonwealth ? ”
Second — “ Ought the prisoner, on the motion made by him, as aforesaid, to be discharged from the crime with which he now here stands indicted, or from further prosecution for the same ? ”
The first question is free of all doubt and difficulty, admitting of a prompt and easy solution. We are all agreed that the evidence objected to ought to be received and considered ; indeed, it is the only evidence admissible or competent on such an issue. The prisoner had alleged a failure to indict within the period of three regular terms; and to sustain the allegation had introduced the records of the examining Court and of the Circuit court, shewing the date of his examination and the holding of more than three actual regular terms, and denied that he had been indicted at any of them. To such an objection or allegation, if untrue, but one answer could be given by the attorney for the Commonwealth — to traverse the failure, and allege the finding of an indictment or a trial, as the case may be, and vouch the record to prove it. Of the indispensable necessity of adducing record evidence to prove the fact of indictment or trial, there surely cannot be a doubt. The real question was as to the sufficiency of the evidence to support the issue on the part of the Commonwealth. That, in truth, is the issue involved *669 in the second question adjourned, and the only one worthy of serious consideration by this Court. It would have been the only one adjourned, but for the informal and summary manner, ore tenus, in which the questions were presented in the Court below. Had the prisoner, instead of his summary motion, pleaded specially his ground or matter of discharge, the attorney for the Commonwealth would have replied and vouched the record relied on by him ; the prisoner would have demurred to the replication, and upon joinder in demurrer the issue would have been formally and regularly developed, which the second question adjourned presents for our decision ; — that is to say, whether he be entitled to his discharge in consequence of the alleged failure to indict or try within the term prescribed by law; or, on the other hand, whether the record adduced by the Commonwealth be sufficient to establish her pretension that he was indicted or. tried in proper time to render him still liable to further prosecution for the of-fence.
This question has been elaborately and ably argued by the counsel for the prisoner, and by the attorney general and his associate, the attorney for the Commonwealth, in the Circuit court for the county of Henrico and city of Richmond. But it is worthy of remark, whilst the counsel of the prisoner have on this occasion displayed their accustomed ability and ingenuity, and have by their arguments been conducted to the same goal, the right of the prisoner to his discharge, they have arrived at one and the same favourable conclusion from very diverse and conflicting premises, and by a very dissimilar, if not adverse, course of ratiocination. The first counsel argued that the accused had not been legally examined for -the offence for which he was re-indicted, upon the ground that the offences charged in the first and last indictments were essentially different, and that therefore he was entitled to his *670 discharge. But if precluded from raising that question, as it had been decided by the Circuit court, and was not adjourned to us, and upon the hypothesis that he had been properly examined, he contended that the nolle prosequi put an end to the prosecution, sweeping off, nullifying and rendering functus officio, not only the first indictment, but the examination of the called Court, commitment and all; and that therefore the prisoner was illegally detained in custody, and was entitled to his discharge at the time he moved for it in the Court below. On the other hand, the last counsel not only admits, but insists on as concessums in the cause, not to be controverted by the prisoner or the Commonwealth, that the offence charged in the last is identical with that alleged in the first indictment, and that the prisoner was regularly and legally examined and remanded, and could not be again examined therefor : and he predicates his argument exclusively upon the Commonwealth’s failure to indict in due time after the examination.
If the first counsel had been right in his premises, in assuming that the offences were not the same, that the party had not been legally examined, or that the nolle prosequi was productive of the consequences he supposed, the conclusion he drew from these premises did not follow, but the very reverse : The legitimate conclusion would be, that whilst the prisoner could not be arraigned and tried on this indictment, he was not to be discharged, but detained in custody until proceedings de novo could be instituted against him. But that the counsel is totally mistaken in his premises as to the non-identity of the offence, the insufficiency of the examination, and the effects and consequences of a nolle prosequi, is as abundantly established by authority as it is manifest in reason. See Halkem’s Case, 2 Va. Cas. 4; Derieux's Case, Ib. 379 ; Mabry’s Case, Ib. 396 ; Huffman’s Case, 6 Rand. 685; Thomas’s Case, *671 2 Leigh 741; Lindsay’s Case, 2 Va. Cas. 345; and Wortham’s Case, 5 Rand. 669.
The arguments of the two couusel are direct antagonisms of each other, and both cannot be sound. One at least must be repudiated, if either can stand the test of analysis and criticism. We have shewn that the first stands condemned by reason and authority, and now let us see whether the last, (which is certainly more plausible,) is any more tenable or sound, when examined and tried by the same tests. The objection taken by the prisoner was for a failure to indict within three terms after the examination. It would have been more accurate and strictly technical to have objected for a failure to try, since the penalty or sanction for a failure to indict is only discharge from imprisonment, whether with or without bail we will not stop to enquire. But as there could be no trial, without an indictment, we may consider the objection for a failure to indict for three terms as inclusive of, and tantamount to charging a failure to try; and so considering it, we come to the consideration of the ground taken by the last counsel. This ground is, that a failure to indict for three terms after the prisoner has been remanded, entitles him to be discharged from the crime, unless the Commonwealth can bring herself within some of the exceptions expressed in the statute. And that although for this offence the accused was both indicted and tried in due time at the fifth term upon the first indictment, according to the provisions and within the exceptions or savings of the statute, and was liable to be again tried at the sixth term, when a nolle prosequi was entered and a new indictment found; yet the Commonwealth, by abandoning the first and re-indicting him, has placed herself in the same predicament as if no indictment had been ever found or trial had or demanded until the sixth term, the time of finding the second indictment and of his arraignment thereupon, and that consequently more than three *672 regular terms passed after his examination without indictment or trial; and the prisoner is therefore entitled to his discharge under the statute. Whilst it is admitted °n aU hands, and was so adjudged in Vance’s Case, 2 Va. Gas. 132, 162, that the prisoner was triable again upon the first indictment, it is insisted, nevertheless, that he is not so liable, or to the same extent, upon the new and more perfect one.
A construction of the law that would require us to concur in such a conclusion as this, would certainly be productive of very inconvenient consequences, if it did not convict the law itself of the grossest defect and most palpable absurdity; besides bringing its provisions in direct repugnancy and irreconcilable conflict with each other. We should need no better illustration of such effects and consequences than this case would furnish. The prisoner was charged with a high crime, for which he was prosecuted with due diligence; because a diligence that satisfied the requirements of the law. He was indicted at the third term, tried and convicted at the fifth, and verdict set aside because of a variance. Three out of four of the failures to indict and try between the examination and trial were owing to his own default. He was confessedly liable to be tried again on the same indictment, for nothing had occurred to discharge him from the offence: as liable to trial on the same indictment as if he had been indicted, tried, convicted, and the verdict set aside at the first term instead of the fifth. Had he been acquitted for the variance or by reason of a defect of form or substance in the indictment, he was by the express provisions and injunctions of the law liable to be again tried. If so, when acquitted for a variance or for a defect in the indictment, a fortiori must he be when convicted and the verdict is set aside by the Court for such defect or variance. In either case a new indictment would generally be necessary either to make the. charge qua *673 drate with the nature of the offence, or to adapt it to the evidence disclosed by the first trial to avoid a recurrence of the variance and a second failure to procure an effectual and final conviction. To this indictment a plea of auterfois acquit or auterfois convict would be of no avail; and yet it is said whilst the party still continues liable to be tried upon the defective indictment or the one obnoxious to the objection of variance upon which he cannot be convicted ; and notwithstanding the law repudiates his plea of former acquittal or former recovery, and makes it the duty of its officers to prefer against him an indictment adapted to the offence and the evidence to sustain the charge, when the new indictment is preferred he may plead to it a failure to indict and try within three terms, and that it is no good answer to the plea for the Commonwealth to shew that from the period of the examination down to the date of her plea, she has been in hot pursuit and diligently prosecuting, and the prisoner all the while staving off and continuing and delaying a trial upon the defective indictment; and not only so, but that she indicted, tried and convicted him upon that defective indictment. To justify such a construction of the law as this, we should have to interpolate the 13th sec. of ch. 207, and the 36th sec. of ch. 208, at pages 770, 778, of the Code of 1849, and read them as provisoes to sec. 16, ch. 199, page 751, of same Code, so as to authorize the trial and conviction of a party upon a new indictment or proper accusation who has been acquitted on the ground of variance, or upon an exception to the form or substance of the indictment: provided this new indictment be found and trial had within three terms of the examination; a requirement or condition in many cases even now an impossibility to comply with or perform; and if we were to sanction the construction contended for it would be so in most or all; because of the temptation it would hold out to culprits to *674 stave off a trial, so that in the event of a defective m- ,. ^ . , . , r . uictment having been round or variance appearing on the trial, they could avail themselves of this statutory ♦ discharge. It would not only allow the accused to take advantage of his own wrong if he has been successful in keeping the Commonwealth at bay for more than three terms on the defective indictment, but it rewards him with an acquittal for it. It makes it then his interest and his policy in all cases in the first place to stave off the trial by continuances and other subterfuges as long as possible; and then after having exhausted all the delays of the law, he goes to trial upon an indictment defective in form or substance or obnoxious to the objection of variance, knowing that as the law now is, whilst upon such an indictment he cannot be effectually convicted if tried even on the merits, he can be finally and forever acquitted if so tried. He takes then the double chance of acquittal by the jury, and if he fail in that, a new trial from the Court on account of the defect or variance; and is then secure by lapse of time from further prosecution for the offence upon a new indictment: And this would be the result no matter how the delays on the first indictment were occasioned; whether by inevitable accident, continuances for the prisoner, failures of juries to agree, setting aside of their verdicts, appeals to the General court by writ of error on the part of the prisoner or otherwise. It would make the law grossly inconsistent with itself in providing that a party should be tried upon a new accusation or indictment, a party not discharged from prosecution for the offence upon the old and defective indictment, and yet to couple with it an implied proviso that would disable its officers by the use of any diligence from complying with its injunctions. It would be obnoxious to a still more glaring inconsistency. If the old indictment were so variant in its charges from the record of the examining Court as to be abatable *675 on that account, or so grossly defective in form or in substance as to require another examination to justify the finding of the true indictment, it is conceded that the party is not entitled to this statutory discharge ; but is liable to be proceeded against de novo by commitment, examination and indictment, to trial and conviction ; and yet for a minor defect, requiring no new examination, but only a new indictment to guard against a variance upon a second trial, the prisoner is entitled to his discharge. So that the construction contended for leads to the strange result that a prisoner’s situation is better for being convicted though abortively, upon a defective indictment, or one objectionable upon the score of variance upon the merits, than if acquitted by the jury for the variance or for the defect in form or substance : aud the Commonwealth’s condition is worse when the indictment is good on its face both in form and substance, and only obnoxious to the objection of a variance, than when it is totally and incurably defective both in form and substance. The answer of the prisoner’s counsel to all these incongruities and absurd consequences is, ita lex scripta est, it is so written and must be so interpreted, otherwise the provisions of the law entitling the accused to a discharge upon failure to try within the time prescribed, might be evaded by means of defective indictments preferred against him, whereby he might be imprisoned or harassed for an indefinite time. And to guard against so remote and visionary a danger, so improbable if not impossible an evil as abuse and evasion on the part of the Commonwealth through her prosecutors, by such means and instrumentalities, Ave are invoked to adhere to the strict letter of this law, regardless of its reason and spirit, and of the effects and consequences of our construction, and of the controlling influence of another part of the same statute; whereby the law is rendered not only grossly defective and palpably absurd, but productive of *676 the practical mischief of operating the acquittal and , discharge from prosecution of atrocious offenders against the laws.
. By adopting the construction contended for we should in truth be adhering to the letter and sticking in the bark ; we should violate the just rules of construction as much as would he who should decide that the law mentioned by Puffendorf, which forbade a layman to lay hands on a priest, not only applied to him who hurts a priest with a weapon, but to him who laid hands on him for the purpose of doing him some office of kindness, or rendering him aid and assistance ; or that the Bolognianlaw mentioned by the same author, which enacted that “ whoever drew blood in the streets should be punished with the greatest severity,” extended to the surgeon who opened the vein of a person that fell down in the street with a fit; or that, in the case put by Cicero or whoever was the author of the treatise inscribed to Herenius, cited by Blaekstone as illustrative of a construction of law by its reason and spirit, the sick man was entitled to the benefit of the law (upon the vessel’s coming safely into port though his remaining was the result of inability from sickness to escape,) which law provided that those who in a storm forsook the ship, should forfeit all property therein, and the ship and lading should belong entirely to those who staid in it. 1 Black. Com. 61.
If we trace our legislation on this subject from the revolution down to the present day, it will be apparent, as was well observed by the attorney general, that its whole purpose was and is to carry into practical operation the 8th section of the bill of rights which guaranties to every one accused of crime a speedy trial, and thereby secures him against protracted imprisonment. And this provision of the bill of rights announced or enacted no new principle or safeguard of freedom. It was but the re-affirmance of a principle declared and consecrated by the famous habeas corpus act, 31 *677 Charles 2, ch. 2, that second Magna Carta of English liberty. By that act it is provided that every person committed for treason or felony shall, if he requires it, the first week of the next term or the first day of the next session of oyer and terminer, be indicted in that term or session or else admitted to bail; unless the King’s witnesses cannot be procured at the time; and if acquitted or if not indicted or tried in the second term or session he shall be discharged from - his imprisonment for such imputed offence. The object of this provision was to prevent the accused from being detained in prison an unlimited time before he is brought to trial. And the principal ground for bailing upon this act, and indeed the evil the act was chiefly intended to remedy, is the neglect of the accuser to prosecute in time. Even in case of high treason, where the party has been committed upon the warrant of the secretary of state, after a year has elapsed without prosecution, the Court will discharge him upon adequate security being given for his appearance. And so also after any unusual delay in case of felony or any inferior offences. 1 Chitty Cr. Law 131, 159. Here then we have the prototype of the 8th section of our bill of rights, and our subsequent legislation on the subject. The acts of 1786, 12 Stat. at Large 340, and 1792, 1 Stat. at Large, N. S., ch. 13, § 10, p. 22, are but transcripts of the habeas corpus act, so far as they entitle the party to be bailed or discharged from imprisonment upon failure to indict at the first or second term or session, with a new and additional provision for a discharge from the crime upon failure to try at the third. The revised act in the Code of 1819, ch. 169, § 28, p. 607, is but a transcript of the preceding enactments, with the addition of the exceptions or savings of the failure to try proceeding from a continuance granted on the motion of the prisoner, or from the inability of the jury to agree. And the acts of 1847-8, sections 12 and 45, pages 144, 152, and the Code of *678 Virginia of 1849, p. 770, § 13, p. 778, § 36, omitting the provision as to right to bail upon failure to indict at the first term, substantially re-enact the other provisions of the Code of IS 19, as to the failure to indict at the second and try at the third, with additional exceptions or savings of the prisoner’s escaping from jail or failing to appear according to his recognizance. No Virginia case in point has been cited on either side of this question ; and it is believed none can be found. The prisoner’s counsel relied on Cawood’s Case, 2 Va. Cas. 527, as a conclusive authority. But it wants one important, we might say indispensable feature, to render it at all parallel with or analogous to this. Cawood had not been indicted at all; an indictment, the finding of which is not matter of record, being tantamount to no indictment. The great question in that case was whether the accused had been indicted in legal contemplation. The Court held as there was no record of the finding, he was not; that it requires not only the foreman’s endorsement of “true bill” signed by himself, but a record in Court of the fact of finding, to make the bill a legal bill of indictment: And the residue of their decision followed as a necessary consequence; that if the prisoner had been legally examined, and three terms had elapsed without a legal indictment, he was entitled to be discharged from the crime.
We have been referred by the attorney general and his associate to Barker’s Case, 2 Va. Cas. 122; Vance’s Case, Ibid. 132, 162; and Levi Gibson’s Case, Ibid. 70, 111; not as direct authorities, but to shew a trial after three terms, and a successful re-indictment and conviction after the first had been abandoned, or after errors in arrest of judgment had been sustained. In Vance’s Case, though three terms had passed, the new trial was upon the same indictment; and in Barker’s and Gibson’s Cases, where the trial was upon new indictments, it does not appear that three terms had *679 passed; or that the question was raised if they had. So that, after all, we are left to decide this case without express authority to govern us, according to our views of the true construction of the law.
We are not left however, without the lights of analogy to guide us, furnished by the construction put upon the old law by the General court in Thompson’s Case, 1 Va. Cas. 319; Lovett’s Case, 2 Va. Cas. 74; Santee’s Case, Ibid. 363 ; and Vance’s Case before cited. They decided that the old law was not to be literally construed ; that the word term used in the statute did not mean a special, but a regular stated term ; and a regular or stated term actually holden, and not the expiration or lapse of the period for holding it fixed by law ; and that a failure of the jury to agree was one of the exceptions or savings fairly and necessarily inaplicable though not enumerated in the statute. And in Vance’s Case where three terms had passed, the Court said, it was not proper to let the prisoner have the benefit of the reversal of a sentence pronounced at one of these terms, and then put him in a better condition in consequence of his having been convicted, than he would have been if the jury had been unable to agree upon a verdict against him. The exceptions implied by the Courts in the old law and subsequently incorporated with additional ones in the Code of 1819, the criminal statute of 1847-8, and the Code of 1849, so far from favouring the conclusion contended for, that upon the maxim of expressio unius exclusio alterius, they operated as a limitation upon or denial of the power and authority of the Court to imply other exceptions than those enumerated, in our judgment rather favour the opposite conclusions: They shew a legislative approval of the interpretation of the Courts by engrafting them in the Code and incorporating them into the written text from time to time as the decisions were made; not that they thereby intended to enact that they were the *680 only exceptions that might occur or should be allowed, but that they were inserted out of abundant caution, and as declaratory provisions of what the law had been decided to be, and by fair and necessary implication would have been decided by the Courts to be without these provisions or express exceptions.
It is a very immaterial question whether this case is to be considered as coming under the operation of the act of 1847-8 or the Code of 1849, for whether considered under the laws of 1819, 1847-8 or 1849, the decision would be precisely the same; but we deem it proper, since the question has been raised and discussed, to express the opinion we have formed, that although the offence was committed under the law of 1847-8, and so far as the question of guilt, degree of crime, quantum of punishment, and rules of evidence are concerned, would be triable under that statute; yet upon the question of discharge arising after the repeal of that statute, when the Code of 1849 was in operation, it must be governed by the Code.
The sole object and purpose of all the laws from first to last, was to ensure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little if any less interesting to the public than to him, and the means, sanctions or penalties it employed for stimulating prosecutors and officers of the law to diligence in the prosecution, was by declaring that the consequence of a failure to indict or try in three terms should operate a discharge from the crime or acquittal, unless it appear that the failure proceeded from no default or delinquency on the part of the Commonwealth, but from causes such as insanity of the prisoner, or the witnesses of the Commonwealth being enticed or kept away, or prevented from attending by sickness or inevitable accident, or by a continuance granted on the motion of the accused, or by reason of his escaping from *681 jail or failing to appear in discharge of his recognizance, or the inability of the jury to agree on their verdict. Now if the law is to be construed literally, and we are to hold that the legislature has enumerated all the exceptions or savings that will excuse delay, by what authority was Vance tried after the lapse of three terms ; by what authority could persons be tried a second term or oftener after much longer delay occasioned by abortive trials, setting aside of verdicts, or arrests of judgments upon writs of error in the General court; as it is admitted on all hands they may be on the same indictment. It might be enquired what would be done in a case where the prisoner was too sick to be tried within the three terms, or were to ask for a continuance, .or did not choose to do so if he could. The statute has in terms provided for the mental malady of insanity, but not for sickness or corporeal infirmity or disability. And finally, it might be asked how the absurdity could be reconciled of making the inability of a jury to agree upon a verdict a sufficient excuse, and at the same time holding a trial and conviction, and setting aside of the verdict by the Court upon the motion of the prisoner, placing the law, to say the least, in as favourable a position to the Commonwealth in regard to diligence as the disagreement of the jury, to be no excuse. If a failure of the jury constitute a good excuse a fortiori should a trial and conviction, as was held in Vancés Case, as to reversal of the sentence upon errors in arrest of judgment. The truth is the statute never meant by its enumeration of exceptions, or excuses for failure to try, to exclude others of a similar nature or in pari ratione; but only to enact if the Commonwealth was in default for three terms without any of the excuses for the failure enumerated in the statute, or such like excuses, fairly implicable by the Courts from the reason and spirit of the law, the prisoner should be entitled to his discharge.
*682 When it is admitted that the Commonwealth had the • light to have tried the prisoner again upon the old and defective indictment, that he was not discharged from still triable for the offence, we cannot understand how it is she has lost that right by resorting to a new and more perfect indictment. There was not the least necessity for the attorney for the Commonwealth to dismiss or quash, or enter a nolle prosequi, before he sent to the grand jury the new one. The pendency of the old would have formed no ground of objection to the new; and the counsel for the prisoner is wholly mistaken in supposing that a plea in abatement would have lain to the new. No such plea for such a cause is known to the criminal law. 1 Chitty Cr. Law 446-7 in margin, 304 top paging; Foster’s Discourses on Cr. Law 104-5-6. Instead of the single indictment now found, the attorney for the Commonwealth, had he so elected, might have had a separate indictment for each count, — might have had all found at one and the same term, or at three successive terms: might, the instant the Court set aside the verdict on the first, have elected, without dismissing, quashing or entering a nolle prosequi, to have him arraigned and tried on the second or third, instead of proceeding, as he now more properly claims to do, upon a single indictment with three counts. All these indictments for the same offence, no matter when found, if found before the party has become entitled to his discharge by reason of the Commonwealth’s delay or failure to try, constitute, like so many counts in a siugle indictment, part and parcel of the same prosecution for the same identical offence ; and like a new or amended declaration filed upon leave to amend, avail to the same extent in protecting the Commonwealth against the bar of this statute, as the new or amended declaration avails to protect the cause of action in a civil case from the bar of the statute of limitations, if the suit were instituted in time. Indict *683 ments, it is true, being the act of the inquest, are not amendable like declarations in a civil suit, which are the work of the suitor or his counsel ; but new indictments found for the same offence are substituted in the place of the old, and quoad hoc operate like the new or amended declaration. So that when a prisoner pleads to a new or second indictment, that he has not been indicted or tried in time, the new indictment having been found and he being arraigned thereon when still liable to be tried for the offence, it is an all-sufficient answer to reply, and shew by the record, an indictment found in time, though a defective one, or to reply and shew by the record, as in this case, a trial, though an abortive one, and rendered so by the action of the Court in setting aside the verdict and awarding a new trial, upon the prisoner’s motion. Whatever objections he could have made to being again tried upon the old indictment, upon the score of failure to indict or try in due time, he can make to the new, and none other.
We do not agree with the prisoner’s counsel that he has any cause to complain, because the old indictment forms one of the counts of the new. It was but a proper measure of precaution on the part of the attorney for the Commonwealth to insert it. The prisoner was not acquitted, but had been convicted on that indictment, and the verdict set aside for variance. Peradventnre upon the second trial, the evidence might vary from the first, and render a conviction proper on that count. It was therefore not only admissible, but altogether proper and regular so to frame the indictment that the prisoner, if guilty, might be convicted upon whichever of the three counts the evidence should sustain.
Although we have chosen to base our opinion and rest our construction upon the reason and spirit of the law rather than the letter, we are far from admitting that it does violence to the letter: for it is questionable, *684 to say the least, whether it is not as well if not better warranted by the words of the statute, taking its provisions in connection and construing them together in order to avoid conflict or repugnance, as that contended for by the prisoner’s counsel. It requires a trial to be had within three terms unless for some of the savings or grounds of exception mentioned: a trial has been had within the time required. The statute neither expressly says, nor can it be fairly interpreted to mean by implication, that it must be an effectual or final trial; because the same statute contemplated that another sort of trial, an abortive one, might take place, improperly convicting or acquitting, upon an indictment defective in form or substauce, or in consequence of a variance ; and to meet that emergency, proceeds to require that the accused shall be liable to be again tried upon a new or more perfect indictment, without any proviso or condition that this shall be within three terms from the examination: And to imply such a proviso or condition would in most cases operate a repeal of the enactment requiring the new trial. It would certainly be as legitimate and fair to imply that after the trial had upon the first and defective count, the provision about discharge was exhausted and functus officio, and the Commonwealth, in all cases, remitted to proceedings de novo, as to hold that you must imply a requirement in many cases impossible to be complied with, that the new trial upon the new indictment must be had within three terms after the examination. If a proviso or condition must be implied, and we admit one is fairly inferrible, it is this, and it is a proper medium between the extremes, that where the party is not entitled to a discharge from the crime by any default, failure or delay on the first indictment, he shall be tried on the new one, with the same diligence and the same diligence only, as would have been required of the Commonwealth upon the old one, had she continued to *685 prosecute upon that indictment. That when the charge in the new count is so variant from the old. or from the record of the examining Court, as to require the interposition of the examining Court by new examination, there the Commonwealth is not only entitled to, but bound to resort to proceedings de novo ; but when the charge is so identically the same as to render a new examination neither necessary nor proper, then the new indictment is to be based upon the examination had, and to be proceeded on to trial and conviction or acquittal as the case may be, subject to precisely the same objections for default or failure to try, and no other, that would have been applicable to the old indictment.
A question of considerable practical importance arising upon the construction of this statute, but not in this case, was mooted or incidentally discussed at the bar, applicable alike to a prosecution whether upon the old or a new indictment: and that is whether there must be three successive failures to try or defaults at three consecutive terms, on the part of the Commonwealth, to entitle a prisoner to his discharge; or whether any three occurring dispersed!y or sparsedly in a series of of alternate continuances or defaults, as well on the part of the prisoner as the Commonwealth, will suffice; as for instance, suppose a case where ten terms have passed without trial or indictment, the Commonwealth continued the cause at the first term, the prisoner the 2d, 3d and 4th, the Commonwealth the 5th, the prisoner the 6th, 7th, 8th and 9th, and the Commonwealth the 10th, is the prisoner discharged by these three continuances, to wit, 1st, 5th and 10th ? The judgment of this Court in Green’s Case, 1 Rob. R. 731, would seem to favour the construction which holds three consecutive terms or failures to be necessary, because in that case five terms had passed without trial. It was continued at the first term for the Commonwealth, at *686 the 2d for the prisoner, and at the 3d, 4th and 5th for • the Commonwealth; and the Court said, “ His right (the prisoner’s) to his discharge upon the adjournment of the Circuit court, at its last term, (which was the 5th,) became complete and was consummatedand “ That Court however upon its adjournment ceased to have a capacity to pronounce by its order the discharge to which the prisoner was entitled by law,” and therefore it discharged him upon habeas corpus; whereas if three consecutive failures were not necessary he would have been entitled to his discharge at the end of the fourth term, instead of the fifth. But it does not appear from the report of the case that this very question was directly raised, discussed or considered by the Court; and may be said, if adjudged or intended to be adjudged, to have passed sub silentio ; or the Court may have deemed it supererogatory to consider whether or not he was discharged after the 4th term, when the 5th had passed, which entitled him to it a fortiori and upon either construction. If this case does not rule the point it must be confessed it is a question of novelty and difficulty, upon both sides of which much may be urged; and that its decision either way is beset with doubts difficult of solution, and objections not a little embarrassing. We have come to no settled conclusion in our own minds either way; and as any opinion we might now pronounce, had one been formed, would be obiter, we purposely abstain from the intimation even of our present impressions or inclinations of opinion upon the subject. It will be time enough to decide it when it shall directly arise, and we shall be called on to pronounce an authoritative decision, when it can be more thoroughly investigated and discussed by counsel, and more maturely and deliberately considered by the Court than it behooves us or is now practicable for us to consider it.
*687 For the reasons set forth and assigned in the foregoing opinion, we have come to the conclusion: First. That the Circuit court ought, on the motion of the prisoner to be discharged, to receive and consider the record and proceedings offered by the attorney for the Commonwealth. Second. That the prisoner’s motion for a discharge from the crime with which he stood indicted, or from further prosecution for the same, ought to be overruled: and we respond to the questions adjourned accordingly. We are unanimous on the first: and Judge Field is the only dissentient on the second question.
Field, J.
The only question which I deem it material to consider in this case is, whether the prisoner is entitled to be forever discharged from prosecution for the offence with which he now stands indicted under the 36th section of the Criminal Code, chap. 208, Code of 1849, p. 778. For if he be entitled to such discharge, it is, as I shall presently shew, to be done under the provisions of that section; although the offence is charged to have been committed at a time when the Criminal Code of 1847-8 was in operation, and under which this prosecution commenced. The act of 1847-8, will be found in the Sessions acts of that session, page 102, section 28. The present law in relation to the like offence will be found in the Code of 1849, page 730, section 21. The provisions of both are substantially the same, though there is some slight change in the words of the law, but such as does not change the effect of those sections. I will also remark that the act of 1847-8, above referred to, has been repealed, except as to offences committed whilst it was in operation; prosecutions for which, however, must be conducted under the present law for regulating criminal proceedings.
*688 On the 13th of December 1848 the first Court was held for the examination of the prisoner upon the charge of embezzling merchandise of the goods and chattels of Word, Ferguson & Barksdale. The examination was put off until January Court 1849, when the prisoner was examined and remanded to be tried for the felony with which he stood charged before the Circuit Superior court of law and chancery for the county of Henrico and city of Richmond.
After this examination had taken place and the prisoner remanded for further trial, it was competent for the attorney for the Commonwealth in the Circuit Superior court of law and chancery of the county of Henrico to prefer an indictment against the prisoner containing one or more counts, or several separate and distinct indictments for the same felony, provided that the same fact, i. e., the same embezzlement, be set forth in each count of the one indictment, or in all the several indictments : and none other but that same fact of embezzlement for which the prisoner had been so -examined. He might in each count or in each indictment have charged the merchandise so embezzled as the goods and chattels of different persons other than Word, Ferguson & Barksdale. Mabry's Case, 2 Ya. Cas. 396. But in whatever form he might think proper to present the case to the grand jury, it was certainly his duty to make his election and prefer’ his indictment within some period of time; and not to detain the prisoner in custody for an indefinite period to await his pleasure or convenience. Nor could he prolong the period by eking out his form of prosecution in driblets ; as would be the case if he could be allowed to prefer an indictment at one term charging the merchandise as the property of Word, Ferguson & Barksdale, at another term as the property of Robert M. & Francis Ayres, at another term as the property of some other person, and so on from term to term presenting a new indict *689 ment, varying only from those previously found in the ownership of the property. By such means the prisoner would be harassed until the end of time, and would be without redress; because, and this is allowable, as is said, the prisoner was not discharged of the crime at the time of presenting these several indictments, in consequence of the finding and the pendency of a previous indictment for the same fact. That these monstrous consequences may result from such an interpretation of the law, are in my opinion, sufficient to shew that such is not its true construction. Let us now en-quire and see within what time is it that the indictment should be preferred; and from the failing to do which the prisoner is entitled to be discharged from further prosecution for the offence.
The 36th section of the act above referred to is in these words: “ Every person charged with felony, and remanded to a Superior court for trial, shall be forever discharged from prosecution for the offence, if there be three regular terms of such Court after his examination without a trial; unless the failure to try him was caused by his insanity ; or by the witnesses for the Commonwealth being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or the inability of the jury to agree in their verdict.” This section does not prescribe, in terms, the time within which the indictment is to be found, but as the finding of the indictment necessarily precedes the trial, it follows as a corollary that the law requires that he shall be indicted before the expiration of the third term after his examination ; unless the failure to do so is to be excused upon some ground specified in the law. What are they ? One is for the failure of the prisoner to appear according to his recognizance. I think the meaning of *690 this is a failure to appear at a trial or at a time when a trial should be had upon the indictment. But let it be conceded that it means his failure to appear when the grand jury could have taken cognizance of the indictment. This was at April term 1849, which was the first term that was held after the date of the examination. At that term the prisoner forfeited his recognizance by failing to appear. Then therefore let us pass by this term as one at which the attorney was excusable for not preferring his indictment against the prisoner.
This brings us to the October term 1849. At this term the witnesses for the Commonwealth failed to appear : and although it does not appear for what cause they failed to appear, yet the record in that respect in the absence of proof to the contrary shews a sufficient reason for excusing the attorney from presenting the indictment at October term 1849. The next term was in April 1850. The witnesses then attended on behalf of the Commonwealth, and an indictment was found by the grand jury, upon which the prisoner was arraigned and plead not guilty; and on his motion the trial was continued until the next term. In this indictment the merchandise is charged as the property of Word, Ferguson & Barksdale, conforming in that respect to the description of the offence for which the prisoner- had been examined in the County court. But as before remarked, the attorney could nevertheless have varied the charge as it respected the ownership of the property, and if he had thought proper to do so, might have charged the merchandise as the property of twenty or more different individuals in twenty or more different counts in the same indictment, or in twenty or more different indictments; all of which, whether different counts or different indictments, would have been separate, distinct and wholly foreign from and independent of each other; so much so that no defect, omission or error in one could be supplied or corrected by a refer *691 ence to any other of the said counts or indictments; a principle in pleading which should not be lost sight of in considering this case ; indeed it should be decisive of it. The attorney adopted this course. He presented his indictment, charging the merchandise as the property of Word, Ferguson & Barksdale, at April term 1850; and as there was no excuse for his not then presenting the very same indictment which was afterwards found at October term 1851, (the fourth term thereafter,) the time from the lapse of which the prisoner claims immunity from prosecution then began to run. That was in my estimation the first term to be counted in favour of the prisoner.
At October term 1850, also, the last mentioned indictment might have been presented. There is no reason assigned for its not being then done. It is true, that at that time the trial was postponed at the instance of the prisoner ; but this continuance was a continuance of the trial upon the indictment which had already been found at April term 1850, and had no reference whatever to any other or future indictment, not at that time even in contemplation of the prosecuting attorney or any other person. The prosecutor was then satisfied with the form of his prosecution, and was full-handed with his testimony, as we must infer from his throwing upon the prisoner the necessity of getting a continuance of the cause, and which the prisoner obtained by his own affidavit shewing good cause for the continuance. Being full-handed as to evidence, there appears to be nothing to excuse him from then preferring the second indictment. This, then, I count as the lapse of the second term in estimating the delay, and the prisoner’s claim to exemption from further prosecution. The next term was held in April 1851, when the attorney had all his witnesses before the Court, and had no sort of excuse for not then preferring before the grand jury the second indictment; for it was at this *692 term that the prisoner was tried and convicted upon the first indictment, and at this term that the verdict of conviction was set aside, because it had been found out upon the trial of the prisoner that the merchandise which had been embezzled by him was not the property of Word, Ferguson &. Barksdale. And thus it appeared that the previous proceedings against the prisoner in the Superior court were wholly ineffectual for the purposes intended, and that the indictment was useless and unavailing, because of the mistake in the indictment as to the ownership of the merchandise. This was the third term, or the last link in the prisoner’s title to be discharged from the crime by reason of the failure to try him at or before the third term after his examination. At this date the Code of 1849 was in force, under the 36th section of which, before recited, the prisoner has a right to claim his discharge.
But much reliance has been placed on the 16th section of chapter 199, Code of 1849, page 751. That section is in these words : “ A person acquitted of an offence on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again upon a new indictment, or other proper accusation, and tried aud convicted for the same offence, notwithstanding such former acquittal.” Now this is no new law ; it is an old principle clothed in a new dress. At first it appeared in the form of decisions by this Court, and relates to a defence upon the plea of auterfois acquit. 1 Va. Cas. 164, 232; 2 Va. Cas. 89, 111, 273, 345 ; and 5 Rand. 669. The principle of these cases now assumes the form of a statute law. But, nevertheless, that statute should .receive the same construction which the decided cases intended to establish. That statute was not designed to have the effect of repealing that law, which I will call the three term law, a law intended to protect a prisoner from unrea *693 sonable delay, by ensuring him a trial at or before the end of the third term of the Court which should be held after his examination. Under the eighth article of the Bill of Rights of Virginia, a prisoner is entitled to a speedy trial; and this law was intended to secure to him the benefit of this principle. Can it for a moment be supposed that this great and humane article in the fundamental law of the land, is to be disregarded and repudiated in all cases in which, from the mistake, (as is the case here,) the error, whim, conceit or ignorance of an attorney, the prisoner would be enabled to escape from punishment, if allowed to enjoy the benefit of this benevolent principle of the Bill of Rights.
Benjamin W. Green was indicted for felony. His trial was not had within the three terms, because there was not time to try him at either of the three terms. Here was no default on the part of the Court, or its officers. The delay resulted not from the want of diligence on the part of the attorney for the Commonwealth, nor from any other cause within the control of man, but altogether from the fact that for want of time the prisoner could not be tried. Yet upon an application to the General court, made on behalf of the prisoner, that Court discharged him from all further prosecution for the crime. 1 Rob. R. 731. This decision accords with the spirit of the Bill of Rights and the laws in relation to criminal prosecutions, and serves to shew that prosecution, conviction and punishment, when brought against the truths set forth and declared in the venerated instrument before referred to, are but as dust in the balance. The intention of the legislature was to deprive the prisoner of the right of pleading in bar of a new prosecution any of the matters specified in the said 16th section; but not to deprive him of any other matter of defence which should arise upon other and independent considerations, such as a failure to indict within the three terms. It was neither more nor less than a *694 legislative recognition of what has been laid down in Vance's Case, Barker's Case, Gibson's Case, and others to be found in our books of reports, in none of which had the three terms been held subsequent to the Court of examination. And I defy a reference to a single case in which a new indictment had been allowed after the three regular terms at which the indictment could be found had passed by. Cawood’s Case is, I think, a good authority to shew that it could not be done.
I am, for these reasons, in favour of discharging the prisoner from further prosecution.